

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00016-CV

John F. **DAVIS**,
Appellant

v.

**FARIAS ENTERPRISES LTD.**, Hector Farias Jr. (a.k.a. Hector Farias), individually and d/b/a
Farias Enterprises Ltd., and Diana S. Farias, individually and d/b/a Farias Enterprises Ltd.,
Appellees

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2010CVT001822 D3
The Honorable Beckie Palomo, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Rebeca C. Martinez, Justice
            Jason Pulliam, Justice

Delivered and Filed:  February 4, 2015

AFFIRMED

John F. Davis appeals an order granting discovery sanctions against him. Davis argues (1)

the order was not supported by the evidence because the key sanctions witness was not credible,

(2) there was no evidence of prejudice, (3) there was no evidence of sanctionable conduct, (4) the

trial court failed to relate the sanctionable conduct to the sanctions imposed, and (5) the portion of

the order requiring him to pay monetary sanctions was not authorized under the Texas Rules of

Civil Procedure. We affirm.

**BACKGROUND**

Davis, an attorney, represented clients in a premises liability suit against Farias Enterprises Ltd., Hector Farias Jr., and Diana Farias (collectively, "the Fariases"). After engaging in discovery, the parties reached a settlement on the merits of the suit. The trial court dismissed the suit pursuant to the settlement agreement.

Before the suit settled, the Fariases filed a motion for discovery sanctions. In this motion, the Fariases alleged that Davis had tampered with a key witness's audiotaped statement by erasing her answers to questions and by coaching or coaxing her to give responses that were not her original answers. The Fariases further alleged that Davis attempted to "pass off" a transcript of the audiotaped statement as a "true and correct" version of the witness's statement when it was not. The Fariases' sanctions motion complained not only of Davis's tampering with the witness's statement but also of his "resistance to the production of the audio recording." Specifically, the motion alleged:

> Mr. Davis and his agent were tampering with evidence, "coaching" and/or coaxing the testimony of a vital witness and inciting her against Defendants with false assertions. . . . In addition, [Mr. Davis] attempted to conceal his flagrant conduct by submitting a certified transcript as an accurate, true and correct version of the audio recording that is the basis of this motion, and simultaneously resisting the production of the original audio recording from which his egregious actions were discovered.

Among other things, the Fariases asked the trial court to order $50,000.00 in monetary sanctions.

At the sanctions hearing, the Fariases presented evidence, which included the witness's testimony from two depositions, the transcript of the audiotaped statement, and the audiotape itself. The deposition testimony included the following exchange between the witness and one of the Fariases' attorneys:

> Q.     Did you notice that there were several parts of the tape where the recording was stopped during your answers?

Q. Yes.

Q. Now, during those points, would you say that that recording accurately reflects your complete answers at those points? When it was stopped?

A. No.

It also included the following exchange between the witness and Davis:

Q. Do you remember me asking you if—if what was on the recording was everything that we asked you when we had the recorder on?

A. When you were recording me, you would press down when no—when something that I said—in other words, you would click on it and erase a little bit and then continue recording.

Q. Okay.

A. Because [Sophia Davis, Davis's legal assistant,] would clarify to me. When I would say something, she would say, "No, No. Not that." And she would erase it and continue recording. And she would say, "You made a mistake," or something like that, and then she . . . [w]ould start all over again.

Q. Okay.

A. And we would start again.

. . . .

Q. Ms. Ramirez, what didn't we record? What did you tell us that we didn't record?

A. No, no. I just know that what I was saying, sometimes she would erase it, or you all would erase it, and then she would tell me, "You're wrong. Say this."

The Fariases supplemented the evidence at the sanctions hearing with invoices and billing records from their attorneys.

The trial court granted the sanctions motion and ordered Davis to pay: (1) monetary sanctions in the amount of $10,000.00; (2) reasonable and necessary attorney's fees and/or court

costs in the amount of $10,000.00; and (3) additional reasonable and necessary appellate attorney's fees in the amount of $3,000.00.[1] Davis appeals the sanctions order.

## STANDARD OF REVIEW

We review a trial judge's imposition of discovery sanctions for an abuse of discretion. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). An abuse of discretion occurs when a trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In reviewing sanctions orders, we do not only look at a trial court's findings of fact and conclusions of law; rather, we also independently review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The entire record includes the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Whether there was no evidence to support the sanctions award is a relevant consideration in determining if the trial court abused its discretion. *See Beaumont Bank, N.A., v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

---

[1] Specifically, the trial court's order states:

IT IS THEREFORE ORDERED that Plaintiffs' counsel, John F. Davis, be sanctioned for his offensive conduct and accordingly is ORDERED to pay Defendants Farias Enterprises, Ltd.[;] Hector Farias, Jr.[;] and Diana Farias:

(1) Monetary sanctions in the amount of $10,000.00;

(2) Reasonable and necessary attorney's fees and/or court costs payable to Druker Law Firm, PLLC in the amount of $10,000.00; and

(3) Additional reasonable and necessary attorney's fees payable to Defendants in the event there is an appeal of this order in the amount of $3,000.00.

**DISCUSSION**

The purposes of discovery sanctions are: (1) to secure compliance with the discovery rules; (2) to punish those who violate the discovery rules; and (3) to deter others from similar conduct. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (orig. proceeding); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 574-75 (Tex. App.—San Antonio 2011, no pet.). Rule 215 of the Texas Rules of Civil Procedure is a comprehensive collection of discovery sanctions; it specifies various weapons at the trial court's disposal for dealing with discovery abuse. *Lehtonen v. Clarke*, 784 S.W.2d 945, 947 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Although the choice of sanctions under Rule 215 is left to the sound discretion of the trial judge, the sanctions imposed must be just. *TransAmerican*, 811 S.W.2d at 917. Whether the imposition of sanctions is just is measured by two standards. *Id*. First, there must be a direct relationship between the offensive conduct and the sanctions imposed. *Id*. "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id*. Second, just sanctions must not be excessive. *Id*.

*Evidentiary Support for the Sanctions Order*

Davis challenges the evidentiary support for the trial court's sanctions order. In his first issue, Davis argues that the evidence does not support the trial court's sanctions order because the witness at the heart of the matter, Reyna Ramirez, was not credible and her testimony should be disregarded as a matter of law. In making this argument, Davis points out inconsistencies and contradictions in Ramirez's deposition testimony. At a sanctions hearing, the trial court is entitled to judge the credibility of the witnesses and the weight to be given their testimony. *Imagine Auto. Group v. Boardwalk Motor Cars, Inc.*, 430 S.W.3d 620, 640 (Tex. App.—Dallas 2014, pet. filed); *JNS Enter., Inc. v. Dixie Demolition, LLC*, 430 S.W.3d 444, 454-55 (Tex. App.—Austin 2013, no pet.); *Kugle v. DaimlerChrysler Corp.*, 88 S.W.3d. 355, 366 (Tex. App.—San Antonio 2002, pet.

denied). Because the trial court was the factfinder at the sanctions hearing, it was authorized to believe all or any part of Ramirez's testimony. *See Helton v. Willner*, No 11-00-00345-CV, 2002 WL 32341832, at \*2 (Tex. App.—Eastland 2002, no pet.) (not designated for publication). As the reviewing appellate court, it is not our place to pass upon the credibility of witnesses or to substitute our judgment for that of the factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We overrule Davis's first issue.

In his second issue, Davis argues there was no evidence that the Fariases were prejudiced by the alleged conduct. In reviewing a sanctions order, we consider the entire record that was before the trial court. *Kugle*, 88 S.W.3d at 364; *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied). We review the evidence in the light most favorable to the trial court's ruling, and draw all reasonable inferences in favor of the trial court's order. *Herring*, 27 S.W.3d at 143; *Vaughn v. Texas Emp't Comm'n*, 792 S.W.2d 139, 143 (Tex. App.—Houston [1st Dist.] 1990, no writ).

A review of the entire record reveals that Ramirez's statements were important to evaluating and defending the premises liability suit against the Fariases. The Fariases claimed that they were not liable because the premises where the injury took place were under the possession and control of Ramirez, whom they designated as a responsible third party. Ramirez was deposed twice, once before and once after she gave her audiotaped statement to Davis and his legal assistant. In her first deposition, Ramirez took the position that she was in possession and control of the premises, which she was purchasing from the Fariases. However, in her audiotaped statement, Ramirez took the position that she was not in possession and control of the premises. In her second deposition, Ramirez explained that some of the statements she made in her audiotaped statement were the result of Davis and his legal assistant coaxing her to change her answers to certain questions. Ramirez also explained that while she was making her audiotaped

statement her answers were altered by Davis and his legal assistant who actually erased her answers. From this testimony, the trial court certainly could have found that Davis tampered with Ramirez's statements in such a way as to shift liability away from Ramirez and toward the Fariases. Second, the record shows that Davis supplemented his discovery responses with a written transcript of Ramirez's audiotaped statement. When the Fariases specifically requested production of the audiotape or a copy of the audiotape, Davis did not comply with this request. In fact, a copy of the audiotape was not provided until after the Fariases moved to compel production of the audiotape and the trial court instructed Davis to allow opposing counsel to listen to the audiotape. From this evidence, the trial court certainly could have found that Davis failed to respond to discovery. Finally, the invoices and billing statements showed that the Fariases' attorneys spent a significant amount of time researching, writing, and presenting the sanctions motion and trying to obtain a copy of the audiotape from Davis. Based on our review of the entire record, we conclude there was some evidence showing that the Fariases were prejudiced by Davis's conduct. We overrule Davis's second issue.

In his third issue, Davis challenges the sanctions order on the basis that there was no evidence of sanctionable conduct. Again, we disagree. As previously explained, there was ample evidence in the record that Davis engaged in sanctionable conduct, namely tampering with a witness's statement and then representing that a written transcription of this statement was a true and correct version of the witness's statement. Additionally, there was ample evidence in the record that Davis failed to respond to discovery by not producing the audiotape when it was requested by opposing counsel. We overrule Davis's third issue.

### *Relationship Between the Offensive Conduct and the Sanctions Imposed*

In his fifth issue, Davis argues the trial court failed to relate the sanctionable conduct to the sanctions imposed. Specifically, Davis complains about the portion of the sanctions order

imposing $10,000.00 in attorney's fees and court costs. The only case Davis cites in support of his argument is *Spohn Hosp. v. Mayer*, which requires the existence of "a direct nexus among the conduct, the offender, and the sanction imposed." 104 S.W.3d 878, 882 (Tex. 2003) (citing *TransAmerican*, 811 S.W.2d at 917)("[A] direct relationship must exist between the offensive conduct and the sanction imposed.").

In its findings of fact the trial court stated,

> There is a direct relationship between the sanctions and the offensive conduct in that Reyna Ramirez provided sworn testimony that [Davis] tampered with her audio recorded statement by stopping the tape at various points throughout the recording of her statement, erasing her original answers, and then coaching and/or coaxing her to change her original responses that were not her original true statements. In addition, [Davis] presented a transcript of the recording to the Court without informing the Court of the vital fact that the transcript did not show that the recording was stopped at various points and for what purposes. [Davis] only disclosed that he stopped the tape throughout the recording of Reyna Ramirez's statement and gave his explanation for doing so after it was revealed by Reyna Ramirez during a second deposition and after he used the transcript for other purposes on the record. Considering the foregoing, amongst other factors supported by the record, the Court finds that the evidence strongly suggests that the audio recorded statement of Reyna Ramirez was altered and/or fabricated by [Davis].

These findings are supported by the evidence. Additionally, the evidence shows that after Davis engaged in the offensive conduct, the attorney's fees and court costs billed to the Fariases exceeded $10,000.00. Based on the entire record, we conclude that a direct relationship existed between the sanctionable conduct and the sanctions imposed. We overrule Davis's fifth issue.

### *Monetary Sanctions*

The Fariases' sanctions motion did not refer to any specific discovery rule. In his fourth issue, Davis argues "[t]he trial court erred when it ordered $10,000.00 payable to [a]ppellees" because "[t]he order directing that counsel pay $10,000.00 to [a]ppellees is not among the sanctions enumerated in Rule 215.3" of the Texas Rules of Civil Procedure.

Under Rule 215.3, if a trial court finds that a party has abused the discovery process, it may impose "any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of rule 215.2(b)." Paragraph 2 of Rule 215.2(b) authorizes the trial court to issue "an order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him." Paragraph 8 of Rule 215.2(b) authorizes the trial court to order a party or the attorney advising him or both to pay "the reasonable expenses, including attorney's fees" caused by the discovery abuse. Thus, contrary to Davis's argument, certain types of monetary sanctions are authorized under Rule 215.3.

Furthermore, under Rule 215.2 of the Texas Rules of Civil Procedure the trial court may order sanctions when a party "fails to comply with proper discovery requests." *See* TEX. R. CIV. P. 215.2. Although Rule 215.2 enumerates many types of sanctions that the trial court may impose, the list is nonexclusive. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 21 (Tex. 2014) (noting that although Rule 215.2 enumerates a wide array of remedies available to a trial court in addressing discovery abuse, the trial court also has discretion to craft other remedies it deems appropriate in light of the particular facts of an individual case); *In re Vossdale Townhouse Ass'n, Inc.*, 302 S.W.3d 890, 893-94 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (acknowledging that Rule 215.2(b) does not limit the types of discovery sanctions the trial court may impose to those enumerated in the rule).

When, as here, an order imposing discovery sanctions neither refers to a specific rule nor tracks the language of any particular rule, we are not limited to analyzing the discovery sanctions under Rule 215.3, but can also consider whether the discovery sanctions are supported under Rule 215.2. *See Jones*, 192 S.W.3d at 583.

The evidence in the record before us supports both a finding that Davis abused the discovery process in violation of Rule 215.3 and a finding that Davis failed to comply with a

discovery request in violation of Rule 215.2. Additionally, the evidence in the record includes invoices and billing records from the Fariases' attorneys totaling more than $60,000.00. These invoices and billing records, which were from two separate law firms, detailed the attorney's fees and court costs incurred because of the discovery abuse as well as other discovery expenses incurred in the litigation. These documents showed that the discovery-related expenses and attorney's fees incurred in the litigation exceeded $23,000.00. Viewing the entire record in the light most favorable to the trial court's ruling, and drawing all reasonable inferences in favor of its ruling, we conclude the trial court did not abuse its discretion in ordering monetary sanctions in the amount of $10,000.00. *See* TEX. R. CIV. P. 215.3, 215.2. We overrule Davis's fourth issue.

## CONCLUSION

The sanctions order is affirmed.

Karen Angelini, Justice